IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ALEXANDRIA LEE,              :
                             :
    Plaintiff,               :
                             :
vs.                          :      CIVIL ACTION 10-0133-M
                             :
MICHAEL J. ASTRUE,           :
Commission of Social Security, :
                             :
    Defendant.               :

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied claims for disability insurance benefits and Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 13). The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 19). Oral argument was waived in this action (Doc. 18). Upon consideration of the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner

1

be **AFFIRMED** and that this action be **DISMISSED**.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance."  *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Plaintiff was thirty-six years old, had completed a tenth-grade education (Tr. 810), and had previous work experience as a cashier, an assembler, and a kitchen worker (*see* Tr. 829).  In claiming benefits, Plaintiff alleges disability due to a major depressive disorder with psychotic features, diabetes mellitus, neuropathy, and a shoulder impingement (Doc. 13 Fact Sheet).

The Plaintiff filed protective applications for disability benefits and SSI on December 8, 2005 (*see* Tr. 19).  Benefits were denied following a hearing by an Administrative Law Judge

(ALJ) who determined that Lee was capable of performing her past relevant work as a cashier, assembler, or kitchen worker (Tr. 16-37). Plaintiff requested review of the hearing decision (Tr. 792-94) by the Appeals Council, but it was denied (Tr. 8-10).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence. Specifically, Lee alleges that: (1) The ALJ did not properly consider all of her impairments; and (2) the ALJ did not properly consider the opinions and conclusions of Lee's treating physician (Doc. 13). Defendant has responded to—and denies—these claims (Doc. 14).

Lee first claims that the ALJ did not properly consider all of her impairments. More specifically, Plaintiff asserts that she suffers from diabetes, hypertension, left shoulder impingement, and neuropathy and that the ALJ should have found them all to be severe impairments (Doc. 13, pp. 2-8).

In *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984), the Eleventh Circuit Court of Appeals held that "[a]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir.

1984); *Flynn v. Heckler*, 768 F.2d 1273 (11th Cir. 1985); *cf*. 20 C.F.R. § 404.1521(a) (2010).[1] The Court of Appeals has gone on to say that "[t]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). It is also noted that, under SSR 96-3p, "evidence about the functionally limiting effects of an individual's impairment(s) must be evaluated in order to assess the effect of the impairment(s) on the individual's ability to do basic work activities."

Plaintiff first raises concerns about her diabetes and hypertension, noting many pages which reference these impairments (Doc. 13, pp. 3-4) (*citing* Tr. 259-77, 285-313, 341-50, 369-72, 399-410, 455-514, 647-655, 659-685, and 768-76). The Court notes that in spite of her extensive medical history of having been treated for these two impairments, Lee has failed to demonstrate that either of them has interfered with her ability to work as required by *Brady*.

Plaintiff next discussed her left shoulder impingement,

---

[1] "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."

4

raising three reasons that the ALJ's opinion should be discounted (Doc. 13, pp. 4-7). Those concerns are as follows: (a) one physician's opinion was rejected as "pertain[ing] to the time period in which it was given;" (b) the ALJ improperly credited a doctor who did not provide a thorough examination; and (c) the opinion of one of the physicians was improperly rejected.

Lee has argued that the ALJ improperly rejected the Medical Source Statement of Dr. Amanda McBane (Doc. 13, pp. 5-6). McBane examined Lee on May 12, 2007 and expressed the opinion that, because of an injury to her left shoulder in a motor vehicle accident, Plaintiff could only lift and or carry less then ten pounds on an occasional basis and that her ability to push or pull with her upper extremities was limited; she would also be able to reach only occasionally (Tr. 567-69; *see generally* Tr. 562-70).

The Court notes that the ALJ rejected the conclusions "because [McBane's] opinions were based on the claimant's status prior to her shoulder surgery" (Tr. 30). Evidence shows that Plaintiff underwent corrective surgery in July 2007 by Dr. Albert W. Pearsall (*see* Tr. 28-29; *cf*. Tr. 626-35). In his last examination of Lee, on August 23, 2007, Pearsall noted

improvement with forward flexion and active abduction of 170 (Tr. 626).

The Court finds no error in the ALJ's rejecting McBane's opinion of Plaintiff's physical limitations in light of the subsequent corrective surgery. The Court does not understand how Lee can assert otherwise.

Plaintiff has also asserted that the ALJ improperly credited a doctor who did not provide a thorough examination. Lee refers to the report—and more specifically, the Physical Capacities Evaluation (hereinafter *PCE*)—of Dr. William Crotwell (Doc. 13, pp. 6-7).

Medical records show that Crotwell, an Orthopaedic surgeon, examined Plaintiff on December 17, 2007 (Tr. 777-79). His notes stated the following: "Physical exam of the shoulder – forward flexion 150 degrees, abduction 140, adduction 120 degrees, internal rotation 90, external 80. Negative lift-off, negative empty can at 0 5/5, at 90 5/5. No crepitus" (Tr. 778). The doctor also discussed x-ray and MRI results before concluding that Lee "could carry out a normal work. She has no restrictions as far as any orthopaedic problems are concerned" (Tr. 778). Crotwell also completed a PCE, the specifics of which will not be set out herein (Tr. 779).

The Court notes that Plaintiff raises her concerns about Crotwell in a discussion of why her left shoulder impingement should be considered a severe impairment. Dr. Crotwell's examination of Lee's shoulder supports the ALJ's decision. While Lee may be correct—and this Court is not finding that she is—that Crotwell's examination was restricted to her shoulder and that the PCE should be ignored, it is irrelevant to this claim and the other claims raised in this action.

Plaintiff has also asserted that the opinion of Dr. McBane was improperly rejected because the ALJ found that the conclusions were based on Lee's subjective statements (Doc. 13, p. 7). The Court finds no reason to discuss this claim as, noted earlier, the Court found that the ALJ had properly rejected McBane's conclusions as they predated corrective surgery (*see* pp. 5-6).

Plaintiff has also asserted that she suffers from neuropathy which the ALJ should have found to be a severe impairment (Doc. 13, pp. 7-8). The Court notes that Lee quotes from the ALJ's opinion which summarized the results of nerve conduction studies, performed in July 2005, which showed the left arm and left lower extremity to be normal; that summary also noted that Plaintiff had had no follow-up treatment since

7

August 2005 (Doc. 13, pp. 7-8) (*quoting* Tr. 28).

In her May 12, 2007 examination, Dr. McBane made the following specific findings regarding a sensory exam: "Light touch and pinprick is intact throughout upper and lower extremities except for her right foot medial aspect dorsal and plantar areas as well as plantar surface of her toes, unable to detect monofilament testing in these areas as well as touch was abnormal in these areas" (Tr. 565-66). McBane's diagnosis was "severe depression with psychotic features" (Tr. 566). The Court also notes that the doctor placed no restrictions on Lee because of her decreased sense of touch (*see* Tr. 567-70).

The Court finds substantial support for the ALJ's conclusion that Plaintiff's neuropathy was not severe. As with the claims of diabetes, hypertension, and left shoulder impingement, Lee has not demonstrated that these impairments interfere with her ability to work. Plaintiff's claim otherwise is without merit.

Lee next claims that the ALJ did not properly consider the opinions and conclusions of her treating physician. Plaintiff specifically references Mariane Saitz, D.O. (Doc. 13, pp. 8-13). It should be noted that "although the opinion of an examining physician is generally entitled to more weight than the opinion

of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."  *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[2] *see also* 20 C.F.R. § 404.1527 (2010).

Lee began receiving treatment for major depression through Mobile Mental Health beginning in June 16, 2004 and extending through August 23, 2007 (Tr. 558; *see generally* Tr. 515-58, 580-93).[3]  Plaintiff was under the care of Psychiatric Nurse Jimmy White from the beginning of her treatment (*see* Tr. 553). Mariane Saitz, an Osteopath, and Nurse White completed a Mental Residual Functional Capacity (hereinafter *MRFC*) Questionnaire on March 30, 2006, which stated that Lee had marked restrictions with regard to activities of daily living, maintaining social functioning, and in maintaining concentration, persistence and pace in completing tasks in a timely and appropriate manner (Tr. 396, 561; *see generally* Tr. 396-98).  It was also suggested that Plaintiff would experience frequent episodes of decomposition at work which would cause her to withdraw from the situation or which would exacerbate symptoms of her impairment (Tr. 396).

---

[2]The Eleventh Circuit, in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

[3]The Court notes that records from Mobile Mental Health, dated May 4, 2006 through August 23, 2007 do not concern Plaintiff (*see* Tr. 614-25).

9

Sainz and White also indicated that Lee would have marked limitations in her ability to respond appropriately to supervision, co-workers, and customary work pressure as well as her ability to completed work-related activities in a normal workday or week (Tr. 397). These limitations were expected to last for a year or longer (*id.*).

The ALJ rejected the conclusions of Sainz and White "because of significant inconsistencies that exist between those opinions and the information contained in [Lee's] mental health treatment records as well as internal inconsistencies within the opinion forms" (Tr. 24). One of the ALJ's reasons was the "number of Global Assessment of Functioning (GAF) scores" which indicated only moderate symptoms (Tr. 24). The ALJ went on to find it inconsistent that Sainz and White found Lee's mental functioning to be markedly impaired "but that she remains able to understand, remember, and carry out instructions and perform simple and repetitive tasks" (Tr. 24).

Plaintiff asserts that the ALJ's conclusions are wrong. First, she argues that the GAF scores represent only snapshots of two days of treatment when she was actually seen twenty-six times during which "she had various complaints of racing thoughts and suicidal ideations, often had agitated behavior,

often was in an irritable or angry mood, and attempted suicide at least once" (Doc. 13, p. 11) (*citing* Tr. 515-58).  Second, Lee asserts that the ALJ was incorrect in his recitation of the facts as Sainz and White found that Plaintiff was moderately restricted in "carrying out, understanding, and remembering instructions, performing simple tasks, and performing repetitive tasks" (Doc. 13, p. 12) (*citing* Tr. 396-98).

    The Court notes that Lee is correct in asserting that the ALJ mischaracterized some of her abilities.  The Court further notes, however, that the ALJ gave "determinative evidentiary weight to the findings and opinions of the examining psychiatrist, Dr. C. E. Smith" (Tr. 31) who examined Lee on May 29, 2007 (Tr. 571-75).  The Psychiatrist noted that Plaintiff was sluggish in manner, though alert; her speech was normal as well as relevant and coherent (Tr. 572).  "She showed no thinking disorder and gave no indication of hallucinations" (*id.*).  Lee appeared glum and indicated that she was not often happy.  There was not much range in her affect and appeared a little impatient.  Plaintiff's memory was intact:  "she recalled three of four unrelated items after 5 minutes and again after 15 minutes" (Tr. 573).  Smith specifically noted, in summary, that Lee "understood and remembered and carried out even complex

instructions" (*id.*). The Psychiatrist's diagnoses were: intermittent explosive disorder, history of treatment for mood disorder, and history of treatment for post traumatic stress disorder. Smith completed a Medical Source Opinion Form (Mental) in which he found her, at most, moderately limited in any of her abilities (Tr. 574-75).

The Court finds substantial support for the ALJ's conclusion that Plaintiff is able to perform her past relevant work. In reaching that decision, the Court finds no error in the ALJ's rejection of the MRFC completed by Sainz and White. The Court reviewed all of the medical records from Mobile Mental Health and found Dr. Sainz mentioned nowhere but in the completed questionnaire. Putting that aside, though, in examining the medical records, the Court did not find information which supported the marked limitations noted in the MRFC. The Court also notes that the conclusions there vary widely from those of Dr. Smith. The Court finds no merit in Plaintiff's argument that the ALJ did not properly consider the opinions of her treating physician.

Lee has raised two claims in bringing this action. Both are without merit. Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401.  Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), that this action be **DISMISSED**, and that judgment be entered in favor of Defendant Michael J. Astrue and against Plaintiff Alexandria Lee.

DONE this 17th day of September, 2010.

s/BERT W. MILLING, JR.  
UNITED STATES MAGISTRATE JUDGE